# Dean and Stoughton *versus* Warnock.

98　　565
30 SC ¹156

1. In a suit upon a promissory note under seal against two joint obligors, the third being dead, the note upon being put in evidence appeared to have an alteration upon its face. In order to explain this alteration, the plaintiff, who was the obligee, was called to the stand and testified that he received the note from one of the joint obligors, he could not remember which, in its then altered condition. He answered two questions upon cross examination, but his competency as a witness was then objected to by defendants. *Held*, that since he might have received the note from the deceased obligor, he was incompetent to testify as against the surviving obligors. *Held*, however, that the objection to his competency came too late, and that, there being other evidence in the case

[Dean *v.* Warnock.]

explanatory of the alteration in the note, the court was clearly right in admitting his testimony and submitting the case to the jury.

2. The fact that a note under seal bears a special indorsement under the signature of the obligee, does not preclude such obligee from recovering upon it in his own name, there being no evidence that the note has ever been assigned or delivered to the person named in the special indorsement, or that he has any interest in it.

October 17th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lawrence county :* Of October and November Term 1880, No. 201.

Debt, by John L. Warnock, for use of John Esson, against William E. Dean and O. P. Stoughton, surviving obligors of Henry Emery, deceased. The plaintiff filed as his narr. an affidavit of claim showing the cause of action to be a lost joint promissory note under seal, signed by William E. Dean, O. P. Stoughton and one Henry Emery, now deceased, dated August 16th 1869, payable eighteen months after date, for $130, on which there was a credit indorsed of $43.91, paid by Emery. Emery died before the commencement of this suit.

The defendant pleaded non est factum, payment with leave, &c.

After filing of the pleadings and before the trial, which was had before BREDIN, J., the note was found. When offered in evidence, it was apparent on the face of the note, that the date had been changed by erasing the date "September 7th" and writing above it "August 16th," and also by erasing the words "fifteen months after date" and inserting the words "eighteen months after date."

The plaintiff's counsel, to explain the alteration, called the legal plaintiff, John L. Warnock, whose testimony and the objection thereto, as shown by the printed bill of exceptions, was as follows:—

"The note is the same as when I accepted it. I can't remember who brought it. My best recollection is that I got it from some of the parties.

"*Cross-examined :*—This note I think I received in New Castle. Was never up at Dean's but the time we put up the machine.

"Defendants object to competency of John L. Warnock, the suit being against defendants as surviving obligors. Objection overruled and exception noted and sealed.

"It might have been changed in New Castle. The time wasn't so long when I sold the machine. I don't know when the alteration was made—whether before or after the note was signed, or who by.

[Dean v. Warnock.]

" *Re-direct:*—I never made any alteration."

The court charged the jury that the note being offered with an alteration apparent on its face, the burden was on the plaintiff to explain to the satisfaction of the jury that the alteration was made before delivery, and that, if so explained, the verdict should be for the plaintiff.

Verdict for the plaintiff for $186.40, and judgment thereon. The defendants took this writ of error, assigning for error the admission of John L. Warnock, legal plaintiff, as a witness, the suit being against defendants as surviving obligors of Henry Emery, deceased, who was a joint maker in the note.

*Martin* (with him *Gardner* and *D. B. & E. T. Kurtz*), for the plaintiffs in error.—The action being upon a joint promissory note against the survivors of one of the joint obligors, the payee, who was the legal plaintiff, was not a competent witness in his own behalf, as to facts which occurred prior to the death of the deceased obligor : Act of April 15th 1869, Pamph. L. 30; Act of May 25th 1878, Pamph. L. 153; Hanna *v.* Wray, 27 P. F. Smith 27; Standbridge *v.* Catanach, 2 Nor. 368; Hess *v.* Gourley, 8 Norris 198; Ash *v.* Guie, 1 Out. 493.

*Robert Gilliland* and *R. B. McComb*, for the defendant in error.—The administrators of Emery, the deceased co-obligor, were not parties to the record. Therefore, Warnock was a competent witness. He did not seek to recover against Emery or his estate. Both of the defendants were also competent witnesses. There was thus no inequality between the parties. The Act of 1869, and the authorities cited by the plaintiff in error, do not apply to this case. Moreover, Warnock's testimony in chief was not objected to until after he had been partially cross-examined. This objection came too late.

Mr. Justice Sterrett delivered the opinion of the court October 31st 1881.

After the death of Emery, one of the three joint obligors, this suit was brought on the bond in the name of Warnock, the obligee, to use, &c., against Dean and Stoughton, the surviving obligors. On the trial it became necessary to explain an alteration apparent on the face of the bond, and for that purpose Warnock, the legal plaintiff, was called, and, without objection, testified in substance that he received the bond from one of the obligors, but could not remember which of them, and that it is now in the same condition as when he received it. After his examination in chief was concluded and he had answered one or two questions on cross-examination the defendants interposed an objection to his competency on the ground that the suit was

[Dean *v.* Warnock.]

against them as surviving obligors. The objection was overruled and the cross-examination of the witness continued, but no additional facts were elicited on either side.

Assuming, for the present, that the objection to the witness was not too late, was he competent to testify to any transaction between himself and either of the three joint obligors? He was undoubtedly competent to testify as to what occurred between himself and either of the survivors, but not as to any transaction between himself and the deceased obligor. The fact sought to be proved by him was that the bond, in its present condition, was delivered to him by one of the three, and he so testified, but could not remember which of them delivered it. For aught he knew he may have received it from the deceased obligor; and, if so, the survivors would be deprived of the benefit of his testimony, and the plaintiff would therefore occupy a vantage ground, gained by the death of the other joint obligor. It would be otherwise if he had testified that one or the other of the survivors had delivered the bond, for then they would be in a position to deny the fact, if it was untrue. The letter as well as the spirit of the Act of 1869 and its supplements is opposed to opening a door to one party that has been closed by death against the other: Hanna *v.* Wray, 27 P. F. Smith 27. In furtherance of the principle of equality recognized in that case, the Act of May 25th 1878, provides, that in all civil proceedings, by or against surviving partners, no interest or policy of law shall exclude any party to the record from testifying to matters having occurred between the surviving partners and the adverse party on the record. In Ash *v.* Guie, 1 Out. 493, this statute is said to be remedial and intended to enable parties who stand on an equality, to testify, though a party in interest be dead. "Its spirit embraces the survivor of two or more who jointly contracted. If two persons jointly execute a note and one dies, in an action between the holder and the survivor this statute should apply as if the makers had been partners: otherwise the mischief is only partially remedied. Those jointly concerned in a transaction are partners in the popular sense of the word, and considering the obvious intendment of the statute it should apply in the case of a surviving partner in the popular as well as the technical sense."

In addition to this, the rights and obligations of a deceased obligor, in a certain sense devolve on the survivors. It is their duty to guard the interests of his estate as well as their personal interests. If they are compelled to discharge the joint obligation, they have a right to claim contribution from his estate; and the extent of such contribution is not always measured by the number of joint obligors. If one or more of them prove to be insolvent the contributive share of the others will be cor-

[Dean *v.* Warnock.]

respondingly increased. It does not follow, therefore, in this case, that by reason of having paid one-third of the bond the personal representatives of the deceased obligor are exempt from further liability.

It follows from what has been said, that while the obligee was a competent witness as to any transaction between himself and either of the surviving obligors, he was incompetent to prove any transaction he may have had with the deceased obligor in relation to the bond. But the objection to his competency came too late. He was permitted to testify fully in chief to the facts which he was called to prove. It was not until he was partially cross-examined, that any objection was raised. The defendants must have known in the outset the ground of objection which they interposed after they heard what the witness had to say. They cannot thus be permitted to take the chance of obtaining testimony favorable to themselves, and then, upon discovering that it is against them, ask to have it excluded. The testimony in itself was both competent and relevant. If there was a valid objection to the competency of the witness by whom it was delivered, it should have been interposed at the proper time. Not having been done then, it should be considered as having been waived. There was other testimony tending to show that the bond was not altered after it was executed and delivered to the obligee. In view of the evidence as to the execution of the instrument and explanatory of the alleged alteration, the court was clearly right in admitting the bond and submitting the case to the jury as was done.

The indorsement on the bond, "Pay to A. Patchen," over the signature of the obligee, presented no obstacle to the plaintiff's recovery. The instrument is not negotiable, and there is not a particle of evidence that it was ever assigned and delivered to Patchen or that he ever had any interest in it. The suit was properly brought in the name of the obligee. The assignments of error are not sustained.

Judgment affirmed.